UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN SHAW, JR., | : | **3:20-CV-01594** |
| Plaintiff, | : | |
| v. | : | (Magistrate Judge Schwab) |
| WAYNE MEMORIAL HOSPITAL, | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

## I. Introduction.

Plaintiff Norman Shaw, Jr. was bit by a fellow prisoner. He went to the emergency room of the defendant's hospital with an open fracture of his left, fifth finger. At the emergency room, his wound was cleaned and dressed, but not x-rayed. Shaw contends that the defendant violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, by failing to appropriately screen him and by failing to stabilize him before discharging him. The defendant has moved to dismiss Shaw's complaint. For the reasons discussed below, we will deny the defendant's motion to dismiss.

**II. Background and Procedural History.**

Shaw, a federal prisoner, began this action on September 3, 2020, by filing a complaint naming the Wayne Memorial Hospital Emergency Room as the defendant. *Doc. 1* at 1. Counsel for Wayne Memorial Hospital subsequently entered an appearance for the defendant noting that Wayne Memorial Hospital is improperly named in the caption as Wayne Memorial Hospital Emergency Room. *Doc. 7* at 1. We directed that the caption of the case be amended to name Wayne Memorial Hospital as the defendant. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.

Shaw claims that the Wayne Memorial Hospital violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. He alleges that on November 26, 2019, after an inmate bit him, he was taken to the emergency room at the Wayne Memorial Hospital with an open fracture of his left, fifth finger. An emergency-room doctor told Shaw that an x-ray of his finger could not be taken because the x-ray machine was broken. The doctor ordered a nurse to clean, sterilize, and bandage Shaw's finger, to give him a Tetanus shot, and then to discharge him with a three-day supply of antibiotics. Records from the emergency room noted that Shaw's wound was cleaned and dressed, but because it was a human bite, it was not sutured. Despite the doctor's orders, no antibiotics were

2

noted on the emergency-room discharge report, and Shaw alleges that he was discharged from the emergency room to the prison with his pain at a 10 on the pain scale, and without his finger being sutured or x-rayed.

Shaw alleges that, on November 26, 2019, he had an emergency medical condition, that Wayne Memorial Hospital knew this because the Bureau of Prisons sent him to the emergency room for an x-ray and possible debridement of his open fracture, and that the Wayne Memorial Hospital discharged him without stabilizing him. Shaw contends that if the defendant had taken an x-ray of his finger, the x-ray would have revealed the fracture.

On January 7, 2020, Shaw's finger was finally x-rayed, and the x-ray revealed a "displaced dorsal rotated fracture through the distal shaft of the left fifth middle phalanx." *Doc. 1* at 7. The x-ray report also noted that "there is surrounding soft tissue swelling without joint space malalignment." *Id*. Shaw was taken to a hand specialist, who noted that Shaw had a "fracture through the middle phalanx with displacement and angulation" and who recommended surgery, more specifically "left small finger P2 fixation with DIP arthrodesis." *Id*. at 8.

He alleges that the defendant treated him differently from other patients with similar symptoms. More specifically, he contends that in 2007, Mary McHugh, who as a result of a fall suffered a displaced, right, radial-shaft fracture, went to the Wayne Memorial Hospital's emergency room, and an orthopedic surgeon

performed surgery on McHugh, aligning the fracture site and inserting a plate and six screws to repair the fracture.[1]  According to Shaw, the defendant treated him differently from the way it treated McHugh.

Shaw claims that the defendant violated EMTALA.  He seeks monetary damages for his pain and suffering, mental anguish, and the deteriorating condition and permanent disability of his finger.

Although the complaint explicitly pleads only claims under EMTALA, Shaw references gross negligence in the title of his complaint, and he attached to his complaint a certificate of merit.[2] *See doc. 1* at 1, 14.  Thus, it is unclear whether Shaw is attempting to plead a negligence claim against the defendant in addition to claims under EMTALA.

Currently pending is the defendant's motion to dismiss the complaint.  That motion has been briefed, and for the reasons discussed below we will deny that motion.

---

[1]  Shaw cites to *McHugh v. United States*, No. 3:CV-08-2006, 2009 U.S. Dist. LEXIS 144271 (M.D. Pa. Dec. 2, 2009), as the source of the facts concerning McHugh.  That case was a Federal Tort Claims Act case, not an EMTALA case.

[2]  Pennsylvania Rule of Civil Procedure 1042.3(a) requires a certificate of merit in professional liability cases.

### III. Pleading and Motion-to-Dismiss Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required

than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**IV. Discussion.**

The defendant contends that the complaint fails to state an EMTALA claim upon which relief can be granted. And the defendant contends that if the court dismisses the EMTALA claims, it should decline to exercise supplemental jurisdiction over any state-law negligence claim. The defendant also contends that the complaint fails to state a negligence claim upon which relief can be granted. As mentioned above, it is not clear from the complaint whether Shaw intended to

plead a state-law negligence claim. But because he has not responded to the defendant's contention that the complaint fails to state a negligence claim upon which relief can be granted, we construe the complaint as raising only claims under EMTALA.

Before we turn to the question whether the complaint states any EMTALA claims upon which relief can be granted, we address a procedural issue raised by the defendant.

**A. Contrary to the defendant's contention, the complaint should not be dismissed based on Local Rule 7.8(a).**

The defendant contends that because Shaw's brief in opposition does not contain a statement of facts, pursuant to Local Rule 7.8(a), all the facts set forth in its motion and brief should be adopted and, on that basis, the complaint should be dismissed. We disagree.

Local Rule 7.8(a) provides, in part:

> The brief of the moving party shall contain a procedural history of the case, a statement of facts, a statement of questions involved, and argument. The brief of the opposing party may contain a counter statement of the facts and of the questions involved and a counter history of the case. If counter statements of facts or questions involved are not filed, the statements of the moving party will be deemed adopted.

M.D. Pa. L.R. 7.8(a).

The defendant argues both that the statement of facts set forth in its motion and the statement of facts set forth in its brief be deemed adopted, and on that basis that motion to dismiss should be granted as a matter of law. *See doc. 53* at 2. We do not construe Local Rule 7.8(a), however, as overriding the well-settled standard of review applicable to a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Further, the defendant has not explained how or why an acceptance of its statement of the facts would lead the court to conclude that the complaint fails to state a claim upon which relief can be granted. Moreover, given that we are dealing with a Rule 12(b)(6) motion to dismiss, the defendant's brief should not contain any facts that are not pleaded within Shaw's complaint or that are not contained in the narrow class of documents that the court may appropriately consider in connection with a Rule 12(b)(6) motion to dismiss. Thus, we reject the defendant's contention that the court dismiss the complaint under Local Rule 7.8(a),[3] and we proceed under the well-settled standard that applies to Rule 12(b)(6) motions.

---

[3] It is ironic that the defendant would rely on Local Rule 7.8(a) as a basis for dismissal, when its own brief fails to comply with that Rule. Local Rule 7.8(a) also provides that "a copy of any unpublished opinion which is cited must accompany the brief as an attachment." M.D. Pa. L.R. 7.8(a). Here, the defendant cites to two unpublished opinions in support of it Rule 7.8 argument, *see doc. 53* at 3, but it does not attach copies of those opinions to its brief as required by Rule 7.8.

**B. The complaint states both an EMTALA failure-to-screen claim and an EMTALA failure-to-stabilize claim upon which relief can be granted.**

Shaw asserts claims under EMTALA. For the reasons discussed below, we conclude that Shaw has stated EMTALA claims upon which relief can be granted.

EMTALA is aimed at curbing the practice of "patient dumping." *Torretti v. Main Line Hosps., Inc.*, 580 F.3d 168, 173 (3d Cir. 2009). "Congress enacted EMTALA in the mid–1980s based on concerns that, due to economic constraints, hospitals either were refusing to treat certain emergency room patients or transferring them to other institutions." *Id*. "Although Congress was concerned that the indigent and uninsured tended to be the primary victims of patient dumping, EMTALA is not limited to these individuals." *Id*. Rather, under EMTALA, "any individual who suffers personal harm as a direct result of a hospital's violation of the statute may bring a private civil action for damages." *Id*.

"EMTALA requires hospitals to provide medical screening and stabilizing treatment to individuals seeking emergency care in a nondiscriminatory manner." *Id*. (footnote omitted). But "it does not create a federal cause of action for malpractice." *Id*. "[A] hospital has two primary obligations under EMTALA: (1) if an individual arrives at an emergency room, the hospital must provide appropriate medical screening to determine whether an emergency medical condition exists; and (2) if the hospital determines an individual has an emergency medical

condition that has not been stabilized, it may not transfer the patient unless certain conditions are met." *Id*. (summarizing those obligations as set forth by *Urb. By & Through Urb. v. King*, 43 F.3d 523, 525 (10th Cir. 1994)).

Shaw presents both a failure-to screen claim and a failure-to-stabilize claim. We address each in turn.

### 1. Failure-to-Screen.

EMTALA contains a medical-screening requirement:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1)) exists.

42 U.S.C.A. § 1395dd(a).

"EMTALA does not define what constitutes 'appropriate medical screening.'" *Byrne v. Cleveland Clinic*, 519 F. App'x 739, 742 (3d Cir. 2013). But given that EMTALA "was aimed at disparate patient treatment," *Torretti*, 580 F.3d at 174, the screening provision has generally been interpreted to require "hospitals to screen similarly situated patients according to the same procedures." *Foster v. Klasko*, No. CV 20-1905, 2020 WL 958556, at *4 (D.N.J. Feb. 27, 2020). "'It is

11

up to the hospital itself to determine what its screening procedures will be.'" *Byrne*, 519 F. App'x 739, 742 (3d Cir. 2013) (quoting *Summers v. Baptist Med. Ctr. Arkadelphia,* 91 F.3d 1132, 1138 (8th Cir.1996)). "'Having done so, it must apply them alike to all patients.'" *Id*. (quoting *Summers*, 91 F.3d at 1138).

Shaw alleges that the defendant[4] treated him differently from other patients with similar symptoms. More specifically, he contends that the defendant treated him differently from how it treated Mary McHugh, who presented to the emergency room in 2007 with a displaced, right, radial-shaft fracture, and an orthopedic surgeon performed surgery on McHugh, aligning the fracture site and inserting a plate and six screws to repair the fracture.

The defendant faults Shaw for not citing to instances other the McHugh case in which he was treated differently from others similarly situated. According to the defendant: "One case does not a lawsuit make under EMTALA. One sparrow does not a spring make." *Doc. 48* at 6. Clever. But in addition to his allegations regarding McHugh, Shaw alleges more generally that the defendant treated him differently from patients with similar symptoms. At this early stage, this is

---

[4] "Hospitals that voluntarily participate in the Medicare or Medicaid programs and have effective provider agreements must comply with EMTALA." *Smith v. Albert Einstein Med. Ctr.*, 378 F. App'x 154, 157 n.4 (3d Cir. 2010). Shaw does not allege that the defendant is a participating hospital, but the defendant does not argue that that it is not. Thus, we assume that the defendant is a participating hospital that must comply with EMTALA. *See id*. (making the same assumption).

sufficient. *Cf McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 647 (M.D. Pa. 2014) (concluding in the context of an equal protection claim that "a plaintiff need not 'identify in a complaint actual instances where others have been treated differently.'" (quoting *Phillips v. Cnty. of Allegheny*, 515 F. 3d 224, 244 (3d Cir. 2008))); *Shkedi v. City of Scranton*, No. 3:CV-14-2069, 2015 WL 1505660, at *10 (M.D. Pa. Apr. 1, 2015) (stating, also in the equal-protection context, that general allegations that the plaintiff was treated differently from others similarly situated are sufficient).

Given Shaw's allegations, we conclude that the complaint sufficiently alleges that the defendant treated him differently from other similarly situated patients. Whether Shaw will be able to establish that fact will need to be determined at a later stage of the proceedings.

The defendant also contends that Shaw is merely alleging that it negligently failed to diagnose his fracture, and while such may support a medical malpractice claim, it does not support an EMTALA claim. While we understand the defendant's argument and that argument may have force at a later stage of the proceedings, again, given that we are deciding a motion to dismiss, and we must accept Shaw's factual allegations as true and construe those allegations in the light most favorable to Shaw, we cannot say as a matter of law that Shaw is merely alleging malpractice, rather than a proper EMTALA failure-to-screen claim.

## 2. Failure-to-Stabilize.

In addition to the screening requirement, EMTALA also contains a stabilization requirement that requires that "if the hospital determines an individual has an emergency medical condition that has not been stabilized, it may not transfer the patient unless certain conditions are met." *Torretti,* 580 F.3d at 173. To plead a failure-to-stabilize claim, a plaintiff must allege that he "(1) had 'an emergency medical condition; (2) the hospital actually knew of that condition; [and] (3) the patient was not stabilized before being transferred.'" *Id*. at 178[5] (quoting *Baber v. Hosp. Corp. of Am.,* 977 F.2d 872, 883 (4th Cir.1992)).

---

[5] Shaw criticizes the defendant for citing to *Torretti* and other cases that were decided at the summary-judgment stage. The standards applicable to motions to dismiss are "vastly different" from the standards applicable to motions for summary judgment. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). "As [the Third Circuit has] explained, 'a motion for summary judgment is different in critical respects from a motion to dismiss for failure to state a claim." *Id*. (quoting *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 863 (3d Cir. 1994)). "'In addition to the fact that a plaintiff presumably has had an opportunity to obtain admissions during discovery, a motion for summary judgment is reviewed under a much more stringent standard than a motion to dismiss for failure to state a claim.'" *Id*. (quoting *ALA,* 29 F.3d at 863 n. 17). Shaw's criticism has some force since at times it appears that the defendant does not recognize that at this stage of the proceedings, Shaw does not have an obligation to present evidence or prove his case. *See e.g. doc. 48* at 6 (referring to "the only proof" offered by Shaw); *doc. 53* at 4 (referring to Shaw's failure to present records to support his contentions); *doc. 53* at 6 (asserting that Shaw has not cited evidence to support his contention that he was treated differently from other patients); *doc. 53* at 9 (stating that Shaw failed or refused to attach medical records to substantiate his allegations).

We cited *Torretti* earlier to provide basic background regarding EMTALA, and here we cite *Torretti* for the elements of a failure-to-stabilize claim. "[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we

Here, the defendant contends that Shaw cannot meet the first element of a failure-to-stabilize claim because he did not have an emergency medical condition. EMTALA defines an emergency medical condition, in relevant part, as:

**(A)** a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--
**(i)** placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
**(ii)** serious impairment to bodily functions, or
**(iii)** serious dysfunction of any bodily organ or part[.]

42 U.S.C.A. § 1395dd(e)(1). Construing the facts in the light most favorable to Shaw, as we must in connection with a motion to dismiss, and given that Shaw alleges that he had an open fracture[6] of his finger, we cannot say as a matter of law at this early stage of the proceedings that Shaw did not have an emergency medical condition as defined by EMTALA.

---

usually ask what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (explaining that generally "the essential elements of a claim remain constant through the life of a lawsuit" and "[w]hat a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial, but the legal elements themselves do not change"). As the elements of a failure-to-stabilize claim are the same at the pleading stage as at the summary-judgment stage, our citation to *Torretti* is appropriate given our recognition that at this stage, Shaw is required to plead, not prove, his claim.

[6] And open fracture is defined as "a fracture in which there is an external wound leading to the break in the bone." *Dorland's Illustrated Medical Dictionary* 742 (32d ed. 2012).

The defendant also contends that Shaw cannot meet the second prong of a failure-to-stabilize claim—that the hospital actually knew of the emergency medical condition. EMTALA requires the hospital to have actual knowledge of the emergency medical condition; it "'does not hold hospitals accountable for failing to stabilize conditions of which they are not aware, or even conditions of which they should have been aware.'" *Torretti,* 580 F.3d at 178 (quoting *Vickers v. Nash Gen. Hosp., Inc.,* 78 F.3d 139, 145 (4th Cir.1996) ("EMTALA would otherwise become coextensive with malpractice claims for negligent treatment.").

Shaw alleges that the defendant actually knew of his condition, and he alleges that the defendant knew because the Bureau of Prisons' medical records state that he was sent to the emergency room with an open fracture of his finger. *See doc. 1* at 4–5. The defendant asserts that because Shaw has not alleged that it received, reviewed, or relied upon the information from the Bureau of Prisons, there is no basis pleaded to support the contention that it had actual knowledge of the fracture. While we understand the defendant's argument, at this early stage of the proceedings and given that Shaw alleges that he had an open fracture, it would be premature to say as a matter of law that the defendant did not have actual knowledge of an emergency medical condition.

The defendant contends that it is contesting all three prongs of Shaw's failure-to stabilize claim. *See doc. 48* at 9. But as to the third prong—that the

16

patient was not stabilized before being transferred—all the defendant asserts is that because Shaw cannot meet the first two prongs, i.e., Shaw did not have an emergency medical condition and it did not have actual knowledge of an emergency medical condition, it did not have a duty to stabilize Shaw. As set forth above, we have concluded that Shaw sufficiently pleaded the first two prongs, and as the defendant does not present any other argument regarding the third prong, we will not address that prong further.

In sum, we conclude that Shaw has stated a failure-to-stabilize claim upon which relief can be granted.

## V. Conclusion.

Based on the foregoing, we will deny the defendant's motion to dismiss the complaint. An appropriate order will issue.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge