UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN SHAW, JR., | : | **3:20-CV-01594** |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| WAYNE MEMORIAL HOSPITAL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**<u>MEMORANDUM OPINION</u>**


A fellow prisoner bit Plaintiff Norman Shaw, Jr. on his finger.  Shaw went to the emergency room of defendant Wayne Memorial Hospital, and, according to Shaw, at the emergency room, his wound was cleaned and dressed, but not x-rayed.  Shaw contends that Wayne Memorial Hospital violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA").[1]

---

[1] Although the complaint explicitly pleads only claims under EMTALA, Shaw referenced gross negligence in the title of his complaint, and he attached to his complaint a certificate of merit. *See doc. 1* at 1, 14.  Although it was unclear whether Shaw was attempting to plead a negligence claim against Wayne Memorial Hospital in addition to claims under EMTALA, in connection with a motion to dismiss, because Shaw did not respond to Wayne Memorial Hospital's contention that the complaint fails to state a negligence claim upon which relief can be granted, we construed the complaint as raising only claims under EMTALA.

Currently pending is Wayne Memorial Hospital's motion for involuntary

dismissal pursuant to Fed. R. Civ. P. 41(b), or, in the alternative, for summary

judgment.[2]  In addition to contending that the court should dismiss this action

because Shaw failed to cooperate in discovery, specifically the taking of his

deposition, Wayne Memorial Hospital contends that it is entitled to summary

judgment because Shaw does not have expert testimony to support his claims and

because Shaw has not presented anything beyond his pleadings to support his

claims.  We will grant the motion to the extent that we will grant summary

judgment to Wayne Memorial Hospital as to Shaw's claims under EMTALA.[3]

---

[2] Shaw asserts in his opposition to this motion that "he has not 'EVER RECEIVED DISCOVERY' from the Defendants [sic] Wayne Memorial Hospital." *Doc. 131* ¶ 26.  The undersigned, however, issued orders and held numerous conference calls with the parties regarding issues in the case, including discovery issues.  Shaw had a full and fair opportunity to conduct discovery.

[3] EMTALA is aimed at curbing the practice of "patient dumping." *Torretti v. Main Line Hosps., Inc.*, 580 F.3d 168, 173 (3d Cir. 2009).  "Congress enacted EMTALA in the mid–1980s based on concerns that, due to economic constraints, hospitals either were refusing to treat certain emergency room patients or transferring them to other institutions." *Id*.  "Although Congress was concerned that the indigent and uninsured tended to be the primary victims of patient dumping, EMTALA is not limited to these individuals." *Id*.  Rather, under EMTALA, "any individual who suffers personal harm as a direct result of a hospital's violation of the statute may bring a private civil action for damages." *Id*.
    "EMTALA requires hospitals to provide medical screening and stabilizing treatment to individuals seeking emergency care in a nondiscriminatory manner." *Id*. (footnote omitted).  But "it does not create a federal cause of action for malpractice." *Id*.  "[A] hospital has two primary obligations under EMTALA: (1) if an individual arrives at an emergency room, the hospital must provide appropriate medical screening to determine whether an emergency medical condition exists;

Shaw presents both a failure-to screen claim[4] and a failure-to-stabilize

claim.[5]  Based on the facts of this case, it is not obvious that by discharging Shaw

---

and (2) if the hospital determines an individual has an emergency medical
condition that has not been stabilized, it may not transfer the patient unless certain
conditions are met." *Id*. (summarizing those obligations as set forth by *Urb. By &
Through Urb. v. King*, 43 F.3d 523, 525 (10th Cir. 1994)).

> [4] EMTALA's medical-screening requirement provides:
>
> In the case of a hospital that has a hospital emergency
> department, if any individual (whether or not eligible for
> benefits under this subchapter) comes to the emergency
> department and a request is made on the individual's behalf for
> examination or treatment for a medical condition, the hospital
> must provide for an appropriate medical screening examination
> within the capability of the hospital's emergency department,
> including ancillary services routinely available to the
> emergency department, to determine whether or not an
> emergency medical condition (within the meaning of subsection
> (e)(1)) exists.

42 U.S.C.A. § 1395dd(a).  "EMTALA does not define what constitutes
'appropriate medical screening.'" *Byrne v. Cleveland Clinic*, 519 F. App'x 739,
742 (3d Cir. 2013).  But given that EMTALA "was aimed at disparate patient
treatment," *Torretti*, 580 F.3d at 174, the screening provision has generally been
interpreted to require "hospitals to screen similarly situated patients according to
the same procedures." *Foster v. Klasko*, No. CV 20-1905, 2020 WL 958556, at *4
(D.N.J. Feb. 27, 2020).  "'It is up to the hospital itself to determine what its
screening procedures will be.'" *Byrne*, 519 F. App'x 739, 742 (3d Cir. 2013)
(quoting *Summers v. Baptist Med. Ctr. Arkadelphia,* 91 F.3d 1132, 1138 (8th Cir.
1996)).  "'Having done so, it must apply them alike to all patients.'" *Id*. (quoting
*Summers*, 91 F.3d at 1138).

> [5] In addition to the screening requirement, EMTALA also contains a
stabilization requirement that requires that "if the hospital determines an individual
has an emergency medical condition that has not been stabilized, it may not
transfer the patient unless certain conditions are met." *Torretti,* 580 F.3d at 173.
To establish a failure-to-stabilize claim, a plaintiff must show that he "(1) had 'an

after cleaning and dressing his wound, but not obtaining an x-ray, Wayne

Memorial Hospital failed to stabilize Shaw within the meaning of EMTALA[6] or

that Shaw suffered personal harm as a result of Wayne Memorial Hospital's

purported failures to properly screen or stabilize him.[7]  Thus, Shaw must present

expert testimony to show that Wayne Memorial Hospital failed to stabilize him[8] or

---

emergency medical condition; (2) the hospital actually knew of that condition;
[and] (3) the patient was not stabilized before being transferred.'" *Id.* at 178
(quoting *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 883 (4th Cir. 1992)).

[6] Under EMTALA, "[t]he term 'to stabilize' means, with respect to an
emergency medical condition . . . to provide such medical treatment of the
condition as may be necessary to assure, within reasonable medical probability,
that no material deterioration of the condition is likely to result from or occur
during the transfer of the individual from a facility[.]"  42 U.S.C.
§ 1395dd(e)(3(A).  Additionally, transfer is defined to include discharge. 42 U.S.C.
§ 1395dd(e)(4).

[7] EMTALA provides that an "individual who suffers personal harm as a
direct result of a participating hospital's violation of a requirement of this section
may, in a civil action against the participating hospital, obtain those damages
available for personal injury under the law of the State in which the hospital is
located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd(d)(2)(A).

[8] "[P]roving the third element of a failure-to-stabilize claim typically
requires the factfinder to consider and weigh expert testimony." *Kaye v. Nussey*,
No. CV 20-9413, 2023 WL 3097477, at *7 (D.N.J. Apr. 26, 2023); *see also*
*Galuten on behalf of Est. of Galuten v. Williamson Cnty. Hosp. Dist.*, No. 21-5007,
2021 WL 3043275, at *6 (6th Cir. July 20, 2021) (reasoning that "[b]ecause the
statute expressly asks a medical question—whether deterioration was likely '*within
reasonable medical probability*,' 42 U.S.C. § 1395dd(e)(3)(B) (emphasis added)—
the stabilization requirement 'entails medical judgment' usually 'understood . . .
only through expert testimony'" (internal case citation omitted)); *Ortiz-Lopez v.*
*Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29,
36–37 (1st Cir. 2001) (precluding plaintiffs' expert witness from testifying, and
concluding that "[w]ithout an expert witness through which to enter medical

that its purported failures to screen or stabilize him resulted in injury.[9]  But Shaw

has not presented any expert testimony.  Further, as to the failure-to-screen claim,

Wayne Memorial Hospital emphasizes that Shaw asserts that his evidence to

support such a claim is in his complaint. *See doc. 128* at 28–29 (citing Shaw's

deposition testimony).  But, at the summary judgment stage, a plaintiff cannot rely

on allegations in a pleading to create a genuine factual dispute.[10]

---

records or provide an opinion in support of their allegations that the defendant
failed to 'appropriately screen' and 'stabilize' [the decedent's] emergency
condition, allegedly causing her death, plaintiffs could not satisfy their burden of
proving an EMTALA violation"); *Brady v. Weeks Med. Ctr.*, No. 19-CV-655-SM,
2021 WL 3115940, at *5 (D.N.H. July 22, 2021) (concluding that absent expert
testimony, the plaintiff "cannot demonstrate to a lay jury that the medical screening
he received was 'inappropriate,'" "that he was suffering from an 'emergency
medical condition,'" or that "he was improperly discharged or turned away without
necessary and proper 'stabilization' (or even that such 'stabilization' was required,
given his condition)").

[9] *See Scott v. Mem'l Health Care Sys., Inc.*, 660 F. App'x 366, 372–74 (6th
Cir. 2016) (noting that the plaintiff "may recover damages under EMTALA in this
litigation only if she can establish that Melton suffered compensable damage, not
as a result of his initial stroke, but because of Memorial's failure to provide
'appropriate' medical screening, because of Memorial's failure to stabilize Melton
properly while he was under Memorial's care, or because of deficiencies in the
procedures used by Memorial to transfer Melton" and concluding that summary
judgment was appropriate given the lack expert medical testimony in this regard).

[10] "[S]ummary judgment is essentially 'put up or shut up' time for the non-
moving party: the non-moving party must rebut the motion with facts in the record
and cannot rest solely on assertions made in the pleadings, legal memoranda, or
oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir.
2006).  In addition to the allegations of his complaint, Shaw relies on the exhibits
that he attached to his complaint. *See doc. 131* at ¶¶ 6–8 (referencing exhibits
attached to the complaint).  Those exhibits consist of medical records from the

In sum, because Shaw failed to present evidence to support his claims, there is no material, genuine factual dispute in this case regarding whether Wayne Memorial Hospital failed to properly screen or stabilize Shaw.[11]  Accordingly, Wayne Memorial Hospital is entitled to summary judgment as to both of Shaw's EMTALA claims.  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

---

Bureau of Prisons both before and after Shaw's visit to the emergency room at Wayne Memorial Hospital as well as records from Wayne Memorial Hospital regarding Shaw's visit to the emergency room. *See doc.* 1-1.  Those records do not, however, provide any evidence that Shaw was screened differently from similarly situated patients.  Thus, they do not support Shaw's failure-to-screen claim.

We also note that in his complaint, citing to *McHugh v. United States*, No. 3:CV-08-2006, 2009 U.S. Dist. LEXIS 144271 (M.D. Pa. Dec. 2, 2009), Shaw alleges that Wayne Memorial Hospital treated him differently from how it treated Mary McHugh, who in 2007, as a result of a fall suffered a displaced, right, radial-shaft fracture, went to the Wayne Memorial Hospital's emergency room, and an orthopedic surgeon performed surgery on McHugh, aligning the fracture site and inserting a plate and six screws to repair the fracture. *See doc. 1* at 2, 3.  Shaw has failed, however, at the summary judgment stage to present evidence from which a reasonable trier of fact could conclude that his injury was similar to the injury of McHugh or that the screening that he received differed from the screening that McHugh received.

[11] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).